IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATRINA BEATY, | ) | CASE NO. 1:12 CV 1161 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| CASE WESTERN RESERVE | ) | |
| UNIVERSITY, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

## Introduction

Before me[1] in this action by Katrina Beaty ("Beaty") seeking damages, *inter alia*, for violations of state and federal discrimination laws[2] is a motion under seal by defendant Case Western Reserve University ("CWRU") to enforce a prior putative settlement of these claims.[3] Also under seal, Beaty has responded in opposition to CWRU's motion.[4] CWRU under seal has replied.[5] The parties have participated in an oral argument on this issue.[6]

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 16. United States District Judge James S. Gwin has, therefore, ordered the matter transferred to me for further proceedings. ECF # 17.

[2] ECF # 2.

[3] ECF # 24.

[4] ECF # 25.

[5] ECF # 26.

[6] ECF # 46.

For the reasons set forth below, CWRU's motion will be denied.

## Facts

Essentially, Beaty claims that while employed by CWRU she was subject to improper conduct by defendant Tedesco and that CWRU did not act to remedy her situation when informed of these events but instead terminated her.[7] Beaty subsequently filed a charge of discrimination against CWRU with the United States Equal Employment Opportunity Commission ("EEOC"), which resulted in the EEOC issuing Beaty a right to sue letter.[8]

A meeting between Beaty and CWRU was then held to discuss a possible settlement of the charge.[9] At the meeting, an oral settlement agreement was reached.[10] A written conciliation agreement apparently prepared by the EEOC was signed by Beaty, but not by either CWRU or the EEOC.[11]

Beaty's counsel, by letter, then sent a copy of the conciliation agreement to counsel for CWRU, asking that CWRU forward to Beaty "a fully executed Conciliation Agreement

---

[7] ECF # 2 at 3-4.

[8] *Id.* at 2.

[9] ECF # 25, Attachment 1 (Beaty affidavit) at ¶ 5; ECF # 24, Exhibit A (Washick affidavit) at ¶ 3.

[10] ECF # 25, Attachment 1 at ¶ 6; ECF # 24, Exhibit A at ¶ 4.

[11] ECF # 25, Ex. 1 at ¶¶ 6, 7.

for my records and any additional settlement agreement between the parties if required by your client."[12]

CWRU did send a draft settlement agreement to Beaty, although it did not also send an executed copy of the conciliation agreement.[13] That draft agreement included, *inter alia*, a provision that the agreement was "in settlement of all claims of any kind that Beaty has or may have against CWRU," and that it constitutes a waiver and release "cover[ing] all possible claims, including but not limited to all claims asserted in the Charge and any claims that could have been asserted in the Charge or in any lawsuit, any worker's compensation claim filed by [Beaty], and claims arising under any employment contract or agreement (express or implied), policies, procedures or practices of CWRU, state or federal statute, local ordinances, tort or common law."[14]

In fact, the CWRU draft further contained explicit language that the waiver and release quoted above "is intended and understood to be a GENERAL RELEASE representing a full and complete disposition and satisfaction of all CWRU's obligations of every description and nature to Beaty," with Beaty agreeing to "renounce any benefit from any

---

[12] ECF # 24, Attachment, O'Brien letter.

[13] *Id.*, Attachment, "Confidential Settlement Agreement and Release of Claims;" ECF # 25, Beaty Affidavit, Ex. 5.

[14] *Id.*

claim or proceeding filed on her behalf by any person, agency or entity with any agency or court."[15]

But Beaty did not sign this draft agreement prepared by CWRU, choosing instead to fax a "notice of recission (sic) of consent of (sic) conciliation agreement" to CWRU and the EEOC.[16]

CWRU, in response, through counsel then wrote Beaty and her counsel, informing them that CWRU intended to enforce the settlement agreement reached by the parties.[17] Specifically, CWRU through its counsel told Beaty and her counsel that at the conciliation conference the parties agreed to the "material terms" of a full resolution of the EEOC charges with the following provisions: an "amount of monetary relief (including the precise breakdown of that relief), non-monetary relief in the form of a letter of reference for Ms. Beaty, and that the terms of the settlement would remain confidential." In addition, this letter from attorney Nicole Quathamer in her capacity as counsel for CWRU also stated that one of the material terms of the settlement that was orally agreed to by the parties was that "Ms. Beaty agreed to fully waive and release [CWRU] from any further lawsuit or action *regarding the matters alleged in the [EEOC] Charge*."[18] Moreover, CWRU in this

---

[15] *Id*. (emphasis in original).

[16] *Id*., Attachment, "Notice of Recission (sic) of Conciliation Agreement;"ECF # 25, Beaty Affidavit, Ex. 6.

[17] ECF # 24, Attachment (Quathamer letter).

[18] *Id*. (emphasis added).

correspondence further stated that since the parties had reached a "binding agreement" as to a settlement, CWRU considered Beaty's refusal to sign to be a breach of the agreement and would sue to enforce the oral agreement.[19]

CWRU here moves to enforce an oral settlement agreement, including a full general release.[20] Beaty, in opposition, argues first that EEOC oral conciliation agreements are not enforceable and further that the evidence here shows there was never a meeting of the minds sufficient to form an enforceable contract.[21] Specifically, Beaty contends that she never agreed to release Dr. Tedesco nor to release CWRU from claims not encompassed within the EEOC charge.[22] CWRU has replied to Beaty's motion in opposition.[23]

## Analysis

As the subsequent discussion explains, the decision on CWRU's motion involves the interpretation of a statute governing the EEOC conciliation process and the enforceability of conciliation agreements achieved through that process – 42 U.S.C. § 2000e-5 and 29 C.F.R. § 1601.26.

---

[19] *Id.*

[20] ECF # 24 at 2 (citing Washick affidavit at ¶ 4; Poulos affidavit at ¶ 2).

[21] ECF # 25 at 3 - 4.

[22] *Id.* at 5.

[23] ECF # 26.

A court may enforce a written conciliation agreement made by parties to an EEOC proceeding to settle the charge at issue.[24] As the Fifth Circuit in *EEOC v. Philips Services Corp.* emphasized, the regulations governing conciliation agreements require such agreements to be in writing and to be signed "by the Commission's designated representative and the parties."[25] Further, the *Philips* court noted that the applicable statute and enabling regulation provide "[n]othing said or done during and as part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the consent of the persons concerned."[26] In that regard, *Philips* held that while "a written conciliation agreement is enforceable by the parties in a specific enforcement action in the federal courts," any attempt to similarly use the court to enforce an oral agreement would "necessarily require[]inquiry into what was said or done [in the confidential conciliation process] and so [would be] in direct violation of the statute."[27]

> In the nearly fifty years since Title VII has been in effect, the parties have not identified and this court has not found any federal action seeking to enforce an oral conciliation agreement. Yet this is certainly not the first time in which a party has changed its mind or reneged on a verbal settlement agreement. Should this court permit actions seeking to establish an oral conciliation agreement, we would certainly see an increase in such actions and

---

[24] *EEOC v. Philips Servs. Corp.*, 635 F.3d 164, 169 (5th Cir. 2011).

[25] *Id.* at 168 (quoting 29 C.F.R. § 1601.24(a)).

[26] 42 U.S.C. § 2000e-5 and 29 C.F.R. § 1601.26(a) as discussed in *Philips*, 635 F.3d at 166.

[27] *Philips*, 635 F.3d at 169.

would risk a decrease in the open communication necessary to reach voluntary settlements during the conciliation process. Neither of these outcomes further Congress's policy goals when establishing Title VII.[28]

*Philips* involved the EEOC's attempt to enforce an oral conciliation agreement. Here, CWRU does not attempt to enforce a settlement based only on the terms memorialized in a written conciliation agreement not properly executed as required by the statute and regulation.[29] But it does seek to enforce the terms contained in the conciliation agreement "as well as [in] the other written documents signed and/or sent by Plaintiff and her legal counsel *after* the conciliation process."[30]

With some reluctance, as more fully explained below, I interpret *Philips* as applicable to all efforts to enforce oral conciliation agreements or to use negotiations during conciliation to support an enforceable settlement, regardless of whether those efforts come from the EEOC or from one of the "concerned" parties. I also adopt *Philips*, so interpreted, as the guiding principle for ruling on CWRU's motion.

As such, CWRU seeks more than can be obtained. First, the conciliation agreement itself was not signed by either CWRU nor the EEOC and so is unenforceable under the

---

[28] *Id.* (internal citations omitted).

[29] *See*, ECF # 26 at 2 (CWRU's reply brief stating that "the University is not seeking to enforce a verbal contract based solely upon verbal statements made during the conciliation conference"; *but see*, ECF # 24 at 3-4 (CWRU's original brief in support arguing that Ohio law makes oral settlement agreements enforceable).

[30] *Id.* (emphasis in original).

applicable regulation.[31] Next, if all the required parties signed the agreement, CWRU does not seek enforcement of that agreement as written, since it plainly does not contain either any form of a release of liability nor any confidentiality provision – both of which CWRU insists were part of the oral agreement made at the conciliation conference but purportedly understood by the parties to be the subject of some later writing.[32]

In sum, CWRU attempts to obtain judicial enforcement of its draft settlement agreement on the grounds that it is, in effect, an addendum to the partially executed and incomplete conciliation agreement that was expected by the parties as part of their oral settlement. As such, the core question necessarily involves an inquiry into what the parties said or did in the conciliation process – something that *Philips* makes plain is outside the scope of a Title VII enforcement action.

While CWRU may well believe that Beaty has now changed her mind or reneged on what she agreed to in the conciliation process, the present enforcement action does not permit CWRU to establish the facts of what actually was agreed to in that process by recourse to anything beyond a fully executed conciliation agreement.

Despite the foregoing, reliance on *Philips* as interpreted above represents a voyage on uncharted waters. The opinion's broad language notwithstanding, *Philips* involved the EEOC's effort to enforce an oral conciliation agreement, not enforcement of an alleged oral

---

[31] *See*, 29 C.F.R. § 1601.24(a) ("Where such conciliation attempts are successful, the conciliation agreement *shall* be reduced to writing and *shall* be signed by the Commissioner's designated representative and the parties.") (emphasis added).

[32] ECF # 24 at 2 (citing Washick affidavit at ¶ 5).

settlement agreement made at a conciliation by a "concerned" party. Moreover, *Philips* is a Fifth Circuit case that no court in this Circuit has ever applied or cited. Only two courts have cited *Philips* in the context of settlement enforcement, and neither court has addressed its applicability to settlement enforcement by "concerned" parties.[33] The Sixth Circuit has never considered the issue presented in *Philips* – the admissibility of an unsigned EEOC conciliation agreement or statements made during a conciliation to enforce an oral settlement agreement. That court has generally recognized, however, the enforceability of oral settlement agreements sufficiently particular to form a binding contract.[34]

An interpretation of *Philips* limiting its holding to efforts by the EEOC to enforce oral conciliation agreements would open the door to consideration of the analysis put forward by CWRU here. Such interpretation may result in a favorable decision on CWRU's summary judgment motion or a partial summary judgment as a gateway to further inquiry into the existence and enforceability of an oral settlement agreement. Under the application of *Philips* adopted by this decision, however, the case moves forward on Beaty's discrimination claims.

For these reasons, I am of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion.

---

[33] *Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-CV-1039, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012); *EEOC v. Hotspur Resorts Nevada, Ltd.*, No. 2:10-CV-2265, 2012 WL 2415541, at *5 (D. Nev. June 26, 2012).

[34] *E.g.*, *Smith v. ABN AMRO Mortgage Group Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011).

42 U.S.C. §2000e-5(b) and 29 C.F.R. §1601.26(a) prevent the EEOC from seeking judicial enforcement of an oral conciliation agreement. Here a "concerned" party to a conciliation, not the EEOC, attempts to judicially enforce an oral settlement agreement allegedly reached during an EEOC conciliation. Do the statute and regulation prohibit such enforcement?

Further I am of the opinion that immediate appeal from this order may materially advance the ultimate termination of the litigation because a decision in such an appeal will:

- definitively remove reliance on an oral settlement agreement from further dispute, or

- alternatively, refocus inquiry in this case on the possible disposition of Beaty's claims as settled by an enforceable oral settlement agreement.

Accordingly, I certify this order for consideration for interlocutory review under 28 U.S.C. §1292(b).

## Conclusion

Accordingly, I deny CWRU's motion to enforce but certify this order for possible immediate interlocutory appeal under 28 U.S.C. § 1292(b).

IT IS SO ORDERED.

Dated:  November 20, 2013    s/ William H. Baughman, Jr.
United States Magistrate Judge